# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

| | |
|---|---|
| NETWORK TALLAHASSEE, INC., individually and on behalf of all others similarly situated, | ) Case No. 4:10-CV-00038-RH-WCS )<br>) <u>CLASS ACTION</u><br>) |
| Plaintiff | ) |
| v. | ) )|
| EMBARQ CORPORATION et. al.; | ) ) |
| Defendants. | ) ) ) |

## **PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Pursuant to Federal Rule of Civil Procedure 23, Plaintiff, through its undersigned attorneys, hereby moves this Court for an Order certifying this case as a class action. As grounds therefor, Plaintiff states:

1. Plaintiff Network Tallahassee, Inc. ("Plaintiff" or "Network Tallahassee") asserts claims for breach of contract, for money had and received, and for violation of the Communications Act of 1934, as amended, 47 U.S.C. § 203, seeking for itself and all others similarly situated money damages, restitution, and any other remedies deemed just and equitable by this Court, resulting from the improper calculation and assessment of late payment charges in excess of those provided for by the express terms of applicable federal tariffs, Embarq's Interstate Service Guide, and Commercial Service Agreements

for interstate access and information services, by Defendants Embarq Management Company ("Embarq Management"), Embarq Florida, Inc. ("Embarq Florida), Embarq Corporation ("Embarq Corp."), CenturyTel, Inc. ("CenturyTel" or "CenturyLink"), and Sprint Nextel Corporation ("Sprint"), and for overcharges resulting from Embarq's failure to make available its Asynchronous Transfer Mode ("ATM") service at lower rates as provided for in the form DSL Commercial Service Agreements.

2.  Plaintiff seeks certification of this case as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3).

3.  The proposed class consists of:

> All entities who purchased from Embarq, Interstate Access Service(s) and/or Information Service(s), including: Frame Relay Services, ATM Services, Local Area Network Services, Ethernet-Based Services, Video Transmission Services, Optical Network Services, Wave-Based Services, wholesale DSL services, Bundled Service(s), or any special access line that carries interstate traffic where the interstate traffic is more than ten percent (10%) of the total carried on the special access line, pursuant to FCC Tariff, Embarq's Interstate Service Guide, or a contractual agreement containing a provision for the assessment of late paymentcharges calculated at the lesser of:
>
> (a) the total amount due times the highest rate (in decimal value) which may be levied by law for commercial transactions, compounded daily for the number of days from the payment date, including the date the customer actually makes the payment to Defendants; or
>
> (b) the total amount multiplied by a factor of 0.000329 times the number of days which occurred between the payment due date and (including) the date payment is actually made to Defendants.
>
> Excluded from the class are Defendants, their parents subsidiaries, and affiliates.

4. <u>Numerosity</u>: The proposed class is sufficiently numerous and geographically dispersed such that joinder is impracticable. Through discovery received to date, there are approximately 136 total commercial DSL nationwide accounts for the period 2006 through 2009, 112 of which are actual unique customers.

5. <u>Typicality</u>: Plaintiff's claims are typical of those of the class. Plaintiff and absent class members all purchased interstate access and/or information services from Defendants pursuant to the same governing documents and were assessed improper late payment charges in contravention of the express terms of those documents. The purchase of those services was and is governed either by tariff, Embarq's Interstate Service Guide, or form contracts, all of which contain virtually identical late payment fee provisions, the breach of which gives rise to Plaintiff's claims for breach of contract and violation of the Communications Act, as amended, 47 U.S.C. § 203. Similarly, Plaintiff's breach of contract claim as it relates to the provision of ATM services is typical of the claims of the class. As Embarq uses a form contract for all of its DSL services, all wholesale purchasers of such services have the same contract term that required Embarq to provide alternative pricing for the ATM service. Plaintiff's claim for money had and received is typical of that of the class because it derives from the same uniform course of conduct making it unjust for Embarq Mangement and/or Embarq Corporation to retain improperly calculated late payment charges paid by Plaintiff and members of the class. Thus, Plaintiff's claims are based on the same legal theories.

6. <u>Adequacy</u>: Plaintiff is an adequate class representative. Its interests are

3

completely congruent with the interests of the class and no conflicts of interest between Plaintiff and absent class members exist. As demonstrated by Plaintiff's conduct in this matter to date, it will continue to adequately prosecute this action by meeting its discovery obligations and monitoring the conduct of its choice of counsel. What is more, Plaintiff's counsel is qualified, highly experienced in complex class litigation, and able to vigorously litigate this action.

7.   <u>Commonality</u>: Myriad issues of law and fact, the resolution of which will affect each potential class member, are common to the class, particularly where, as here, Plaintiff's claims arise from Defendants' standardized billing practices. In addition to the overarching common questions relating to Defendants' liability, other issues present questions of law and fact are common to all class members. These issues include:

   a)   Whether Embarq Management acts as a central and common resource to Embarq's local operating company subsidiaries by providing centralized and computerized billing services for class members through the programming and utilization of the CRB and CASS systems;

   b)   Whether Embarq Management generated customer bills and invoices containing late payment charges for services provided to class members;

   c)   Whether the billing processes employed by Embarq Management through its use of the CRB and CASS billing systems are the same for all class members;

   d)   The degree to which Embarq Management, Embarq Corporation, and/or CenturyTel, Inc. received and are in possession of class members' payments containing improperly calculated late payment charges;

   e)   Whether Embarq Management, Embarq Corporation, and/or CenturyTel, Inc.'s retention of improperly calculated late payment charges is unjust, such that equity and good conscience require such sums be returned to Plaintiff and the class .

8. <u>Rule 23(b)(3)—Predominance and Superiority</u>: The central questions presented in this litigation are:

   a) whether the services represented by Plaintiff's accounts are properly characterized as interstate, such that the late payment fee provisions contained in Defendants' federal tariff and/or Interstate Service Guide apply rather than those contained in the intrastate General Exchange Tariff;

   b) Defendants' ultimate liability for its failure to abide by the express terms of its written agreements—i.e., whether Embarq correctly interpreted the relevant late payment fee provisions contained in its contracts and tariffs when calculating and assessing late payment fees on interstate access and information service accounts and whether Embarq failed to provide ATM service at the intrastate rate as it was obligated to do by the terms of its form DSL contracts; and

   c) whether, as a matter of equity, Defendants should be required to return to Plaintiff and the class the monetary amounts it improperly collected as late payment fees.

All class members' claims against Defendants will succeed or fail based on how these questions are resolved and each of these central questions is common to all class members and predominates over any individual issues. In addition, there is no superior means of adjudicating this case than use of the class action device. Proceeding on a classwide basis offers the salutary benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

9. <u>Rule 23(b)(2)</u>: Defendants acted, or refused to act, on grounds generally applicable to the class. Embarq Management operates and controls the billing operations for all of Embarq's local operating companies through its utilization of the CRB and CASS billing systems. Those billing systems are uniformly programmed to assess the higher late payment charge fee (by applying the incorrect formula or the inapplicable

5

intrastate rate) on the interstate accounts at issue in this litigation. As a result, Defendants assessed all class members incorrect late payment charges across the board. What is more, money damages are incidental to injunctive or declaratory relief. If Plaintiff's allegations in support of its claims for breach of contract and for violation of the Telecommunications Act are correct, Plaintiff and the class would be automatically entitled to damages for the excessive late payment charges they paid.

10.   The proposed class definition is adequate and includes identifiable class members. Any member of the proposed class would have the requisite standing to sue on its own behalf or in its own right.

WHEREFORE, Plaintiff respectfully requests that this Court certify this case as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3).

Dated: October 15, 2010

**GREEN WELLING, P.C.**

By: */s/ Robert S. Green*
Robert S. Green
(CA Bar No. 136183)
*Admitted Pro Hac Vice*

Brian S. Umpierre (CA Bar No. 236399)
*Admitted pro hac vice*
595 Market Street, Suite 2750
San Francisco, CA 94105
Telephone: (415) 477-6700
Facsimile: (415) 477-6710

Kathy J. Maus
**BUTLER PAPPAS WEIHMULLER KATZ CRAIG LLP**
3600 Maclay Boulevard, Suite 101
Tallahassee, FL 32312
(FL Bar No. 0896330)
Telephone: (850) 894-4111
Facsimile: (850) 894-4999
kmaus@butlerpappas.com

*Attorneys for Plaintiff*